998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Michael A. KREBSER, Defendant-Appellant.
 No. 92-5500.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993.
July 6, 1993.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CR-90-191-C)
 Argued: James William Erbeck, Woodburn & Wedge, Las Vegas, Nevada, for Appellant.
 Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal raises several issues with regard to the sentence imposed by the district court on appellant, Michael Anthony Krebser ("Krebser"), after he pled guilty to one count of conspiracy in violation of 18 U.S.C. § 371 (1988).
 
 I.
 
 2
 On December 3, 1990, the Grand Jury for the Western District of North Carolina charged Krebser and six other defendants in a forty-two count indictment filed in Charlotte, North Carolina. The indictment alleged that the defendants participated in a multi-million dollar Ponzi* scheme involving wide-ranging investment and employee leasing programs. All defendants, including Krebser, entered voluntary guilty pleas to one or more of the counts.
 
 
 3
 Appellant Krebser was named in twelve mail fraud counts (18 U.S.C. § 1341), six counts of interstate shipment of fraudulently obtained property (18 U.S.C. § 2314), one count of embezzlement from employee welfare benefit plans (18 U.S.C. § 664), fourteen money laundering counts (18 U.S.C. § 1956), one criminal forfeiture count (18 U.S.C. § 982), and one conspiracy count (18 U.S.C. § 371). Pursuant to a plea agreement in which defendant Krebser agreed to pay $1,000,000 in restitution and which had a twelve month recommended sentence cap, Krebser pled guilty to the conspiracy count. Krebser failed to pay the $1,000,000 restitution thereby breaching the plea agreement, but under the agreement's terms his guilty plea stood.
 
 
 4
 After a sentencing hearing on May 11, 12, 15, and 18, 1992, the district court sentenced Krebser to twenty-seven months imprisonment, three years supervised release, and ordered $3,000 in restitution. As of February 8, 1993, none of the restitution had been paid. It is this sentence of the district court from which Krebser appeals.
 
 II.
 
 5
 All of the issues raised in this appeal relate to the district court's findings of fact for its purpose of properly applying the sentencing guidelines. Accordingly, we will apply the "clearly erroneous" standard in reviewing the determinations of the district court. See United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992).
 
 
 6
 The first issue is whether the district court erred in its calculation of the amount of loss to be attributed to Krebser for sentencing purposes under U.S.S.G. § 1B1.3. At sentencing, the district court found that "the loss of $2.4 million was reasonably foreseeable to Mr. Krebser." (J.A. 471). Pursuant to U.S.S.G. § 1B1.3, the district court determined that such relevant conduct would raise Krebser's base offense level by twelve levels. (J.A. 471). The district court's $2.4 million figure came from the following sources: $529,338 in diversions made by Krebser's co-defendant's from CAP Programs, Inc. ("CAP") after Krebser and co-defendant Spieles purchased the company; approximately $400,000 in diversions made by Krebser's co-defendant's from Universal Staffing Associates, Inc. ("USA"); and $1.5 million in unpaid medical claims that USA was responsible for, but could not pay.
 
 
 7
 Krebser argues that this amount is grossly excessive. He maintains that the only stolen money he allowed co-defendant Spieles to forward to him was a corporate loan of approximately $245,000 which Spieles had illegally obtained from CAP. Further, Krebser states that he returned $148,000 of this loan to Spieles. Thus, according to Krebser, the district court should have attributed only $97,000 to him for the purposes of sentencing.
 
 
 8
 The relevant conduct provision of the Sentencing Guidelines, U.S.S.G. § 1B1.3, states in pertinent part:
 
 
 9
 (a) [offense levels and adjustments] shall be determined on the basis of the following:
 
 
 10
 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of the conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
 
 
 11
 (2) [with respect to fraud offenses] all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;
 
 
 12
 (3) all harm that resulted from the acts or omissions specified in subsection (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions;....
 
 
 13
 The pertinent section of the application note to section 1B1.3 in force at the time of sentencing read:
 
 
 14
 In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.
 
 
 15
 U.S.S.G. § 1B1.3, comment. (n.1).
 
 
 16
 In the instant case, the evidence suggests that Krebser participated in at least two meetings with CAP originator and co-defendant Robert W. Long ("Long") in April 1989 and again in May 1989 regarding the takeover of CAP by co-defendant Spieles and Krebser. According to the unrefuted testimony of Long, he explained at length to both Spieles and Krebser the fraud that was taking place at CAP, including investor fund shortages, nonexistent IRA funds, diversion of CAP staffing funds to CAP programs, and non-payment of taxes and other payroll withholding. Still, Krebser and Spieles enthusiastically proceeded with their plans to purchase and take-over CAP. Further, once the take-over was complete, the evidence indicates that Krebser and Spieles began to drain funds away from CAP to their mining operations in Nevada.
 
 
 17
 Later, in July 1989 Spieles, co-defendant Jerry M. Wolicki ("Wolicki"), and Krebser started a new venture, USA, which took over approximately one-half of CAP's fraudulent employee leasing programs. Again, Spieles and Krebser diverted funds from this operation to their mining operations in Nevada. Krebser was the corporate secretary for CAP, the treasurer and director of USA and a fifty percent partner with Spieles in all of the ventures at issue here. From these facts, it is readily inferable that Krebser had extensive knowledge of the fraudulent activities in which CAP and USA were engaged.
 
 
 18
 It is clear that, initially, Krebser was heavily involved in the purchase and take-over of CAP as well as the creation of USA. It is inconceivable, especially in light of the testimony of Long, that Krebser did not foresee that CAP would continue to be operated in the same fraudulent manner it had been operated in prior to its purchase or that the new venture, USA, would be operated similarly. In fact, after the take-over of CAP, Krebser and Spieles continued to employ most of the employees that had created USA and implemented the fraudulent activities initially. Furthermore, in setting up USA, Krebser and Spieles continued to perpetuate the same type of fraudulent activities. In all of these activities, Krebser was involved in the initial planning of the venture, he acted as a corporate officer, and benefitted financially. It was completely reasonable for the sentencing court to attribute to Krebser the entire loss arising out of CAP's activities after Krebser and Spieles became involved with the company as well as the entire losses associated with USA from its inception. This is so because even though Krebser may not have directly diverted funds from the ventures, such divesture and losses were readily foreseeable on the basis of his co-conspirator's actions. Accordingly, we hold that the determination of the district court to attribute $2.4 million to Krebser for sentencing purposes was not clearly erroneous and is therefore affirmed.
 
 
 19
 The second issue is whether the district court erred in its application of an upward adjustment for abuse of trust in sentencing Krebser under U.S.S.G. § 3B1.3. The district court applied a two point adjustment to Krebser's total offense level on the basis that he had abused a position of trust. Krebser argues that he did not occupy a position of trust because he never was involved in the day-to-day operations of CAP or USA and was never directly involved with investors nor ever induced any parties to invest or participate in CAP or USA.
 
 
 20
 The government maintains, however, that as a corporate officer of both CAP and USA, companies charged with receiving funds from employers to be paid out according to an agreement, placed Krebser as well as his co-defendants in a position of trust with respect to these parties. Thus, the government contends that in allowing his codefendants to misappropriate CAP and USA client funds, Krebser breached this trust, and perpetuated the fraud scheme. This action, asserts the government, amounted to an abuse of a position of trust under U.S.S.G. § 3B1.3.
 
 
 21
 Section 3B1.3 provides: "[i]f the defendant abused a position of public or private trust, or used special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." Application Note 1 to the guideline states: "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could easily have been afforded other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3, comment. (n.1).
 
 
 22
 In the instant case, there is no doubt that Krebser was, in fact, an officer of both CAP (secretary) and USA (treasurer and director). Further, the evidence illustrates that both entities were involved in handling the funds of businesses for various purposes (i.e., paying insurance premiums, taxes, payroll, etc.) and, as entities, were clearly in positions of trust with regard to their clients. It is true that Krebser was not involved in the day-to-day operations of either corporation. However, he aided in the purchase of CAP and the creation of USA. Further, he accepted funds from CAP and USA with the knowledge that such funds were being fraudulently obtained and used. This activity was a significant contribution to the facilitation of the crimes of which Krebser and his co-defendants pled guilty. Accordingly, the district court's decision to enhance Krebser's sentence on the basis of an abuse of a position of trust under U.S.S.G. § 3B1.3 was not clear error and is therefore affirmed.
 
 
 23
 The third issue is whether the district court erred in its application of an upward adjustment for more than minimal planning in sentencing Krebser under U.S.S.G. § 2F1.1(b)(2). The district court applied a two point adjustment to Krebser's offense level for "more than minimal planning" pursuant to U.S.S.G. § 2F1.1(b)(2)(A). Krebser maintains that the sentencing court did not make any specific findings of fact as to why Krebser should suffer such an enhancement. Furthermore, according to Krebser, he was only involved in the fraudulent scheme of his business partners to the extent of one transaction-a $245,000 corporate loan from CPA to GEMCO, a mining operation located in Nevada owned and operated by Spieles and Krebser.
 
 
 24
 Krebser's argument is unpersuasive. First, there was clear evidence that Krebser joined the conspiracy with knowledge of the fraudulent activities which had taken place at CAP in the past and with knowledge that such fraudulent activities were to continue at CAP once he and Spieles took over. Additionally, Krebser was involved in the creation of USA to continue the same schemes once CAP became insolvent. The take-over of CAP and creation of USA were themselves activities which required more than minimal planning. Additionally, under U.S.S.G. § 2F1.1(b)(2)(B) an enhancement may be triggered by "a scheme to defraud more than one victim." Here, the evidence demonstrates that approximately 1,350 employee families from 120 client companies were injured during the time Krebser was involved with CAP and USA. Accordingly, we hold that on either basis, the district court was correct in giving Krebser a two point enhancement under U.S.S.G. §§ 2F1.1(b)(2)(A) or 2F1.1(b)(2)(B) and is therefore affirmed.
 
 
 25
 The final issue is whether the district court erred in failing to provide a four point "minimal participant" downward adjustment in sentencing Krebser under U.S.S.G. § 3B1.2(a). Krebser contends that he should have been allowed a four point reduction due to his substantial lack of participation in the conspiracy. In support of this argument, Krebser points to the testimony of FBI Special Agent Bradbury which describes Krebser as less culpable than his co-defendant Spieles.
 
 
 26
 The testimony of Bradbury was not as Krebser would characterize it. Bradbury, at most, described Krebser as less culpable than Spieles, but very blameworthy nonetheless. In the testimony to which Krebser directs the Court, Bradbury described Krebser as"being the co-officer [with Spieles] and being totally aware of the activities with respect to the situation regarding USA and unpaid claims, and in the direction of money out west to the mining operations, falls behind Mr. Spieles in that regard." (J.A. 227). Clearly, such testimony does not absolve Krebser of responsibility, but simply places him in the proper relation to Spieles on a scale of culpability. The district court properly took note of this evidence and mitigated Krebser's sentence by two levels as a "minor participant" pursuant to U.S.S.G.s 3B1.2(b). However, to reduce Krebser's role further by characterizing his actions as "minimal" is simply not justified. Accordingly, on this issue the district court is also affirmed.
 
 
 27
 Thus, for the reasons stated herein, the rulings and judgment of the district court are hereby
 
 
 28
 AFFIRMED.
 
 
 
 *
 A Ponzi or pyramid scheme is an investment program designed such that early investors are paid off with money paid into the program by later investors to encourage yet more and bigger investments. The plan will succeed until the amount of money going out of the program to payoff early investors exceeds the amount of funds coming into the program from later investors at which time the entire program will collapse like a "house of cards." Named for the 1920's swindler, Charles A. Ponzi